IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.: _____

| | | |
|---|---|---|
| Melissa Efird, as Personal Representative of the Estate of KYLE BARRETT KEPLEY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ROCKINGHAM COUNTY SHERIFF SAMUEL SCOTT PAGE in his Official capacity; CAPTAIN MARCUS SHANE BULLINS in his Individual capacity; OFFICER MARK SAMUEL MARTIN, JR. in his Individual capacity; OFFICER ORIN SPENCER STULTZ in his Individual capacity, OFFICER REID JAMES BOYD, SR. in his Individual capacity; CHARVENE MICHELLE HOLLOWAY in her Individual capacity; SOUTHERN HEALTH PARTNERS, INC.; ELTON J. AMOS, JR., M.D., and REGINALD FENNELL. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT** (Jury Trial Demanded) |
| Defendants. | | |

_____

COMES NOW the Plaintiff, Melissa Efird, as the Personal Representative of

the Estate of Kyle Barrett Kepley, by and through counsel, complaining of the

Defendants, jointly and severally, and hereby alleges and says as follows:

**PARTIES**

1

1. Kyle Barrett Kepley, Plaintiff's intestate, was born on December 12, 1986 and died at 35 years of age on May 3, 2022 at the Rockingham County Detention Center. At the time of his death, Mr. Kepley was a citizen and resident of Rockingham County, North Carolina.

2. Plaintiff, Melissa Efird, has been duly appointed by the Rockingham County Clerk of Court as the Personal Representative of the Estate of Kyle Barrett Kepley. Plaintiff is a resident of Reidsville, Rockingham County, North Carolina and was the mother of the decedent. A copy of the Letters of Administration are attached hereto as Exhibit "A."

3. Defendant, Rockingham County Sheriff Samuel Scott Page (hereinafter referred to as "Defendant Sheriff Page"), to Plaintiff's information and belief, is a citizen and resident of Rockingham County, North Carolina. Under the laws of North Carolina and policies and practices of Rockingham County, he is the chief law enforcement officer for Rockingham County and is responsible for the operation of the Rockingham County Detention Center, including the supervision, training and conduct of his officers and agents employed in the jail in accordance with N.C. GEN. STAT. § 162–55. He has a legal duty as Sheriff to safeguard the persons in his custody in the jail. Sheriff Page is sued in his official capacity under G.S. 58-76-5 and G.S. 153A-435. He and his office are

also sued pursuant to the Doctrine of *Respondeat Superior* for the actions and omissions of his Officers, employees, servants and agents.

4. Defendant Sheriff Page has waived any claim of sovereign immunity for himself, his deputies, servant and employees by purchasing a surety bond pursuant to N.C.G.S. 58-76-5 and/or by purchasing liability insurance pursuant to N.G.S. 153A-435 and/or by participation in a risk management pool as authorized by statute, thereby waiving any governmental or sovereign immunity that might otherwise apply to the Sheriff or his agents in this action.

5. Defendant, Captain Marcus Shane Bullins (hereinafter referred to as "Defendant Bullins"), to Plaintiff's information and belief, is a citizen and resident of Rockingham County, North Carolina and was at all material times employed by Sheriff Page at the Rockingham County Detention Center and is being named as a Defendant herein in his individual capacity. The surety bond and the commercial insurance or risk pool arrangement referred to in the previous paragraph waive any claim to governmental or sovereign immunity that this Defendant might claim in his official capacity.

6. Defendant, Officer Mark Samuel Martin, Jr. (hereinafter referred to as "Defendant Martin"), to Plaintiff's information and belief is a citizen and resident of Rockingham County, North Carolina, and was at all material times employed by

3

Sheriff Page at the Rockingham County Detention Center and is being named as a Defendant herein in his individual capacity. The surety bond and the commercial insurance or risk pool arrangement referred to in the previous paragraph waive any claim to governmental or sovereign immunity that this Defendant might claim in his official capacity.

7. Defendant, Officer Reid James Boyd, Sr. (hereinafter referred to as "Defendant Boyd"), to Plaintiff's information and belief is a citizen and resident of Rockingham County, North Carolina, and was at all material times and is employed by Defendant Sheriff Page at the Rockingham County Detention Center and is being named as a Defendant herein in his individual capacity. The surety bond and the commercial insurance or risk pool arrangement referred to in the previous paragraph waive any claim to governmental or sovereign immunity that this Defendant might claim in his official capacity.

8. Defendant, Officer Orin Spencer Stultz (hereinafter referred to as "Defendant Stultz"), to Plaintiff's information and belief is a citizen and resident of Rockingham County, North Carolina, and was at all material times employed by Sheriff Page at the Rockingham County Detention Center and is being named as a Defendant herein in his individual capacity. The surety bond and the commercial insurance or risk pool arrangement referred to in the previous paragraph waive any

4

claim to governmental or sovereign immunity that this Defendant might claim in his official capacity.

9. Defendant, Charvene Michelle Holloway (hereinafter referred to as "Defendant Holloway"), to Plaintiff's information and belief is a citizen and resident of Rockingham County, North Carolina, and was at all material times employed by or on behalf of Defendant Sheriff Page at the Rockingham County Sheriff's Office and is being named as a Defendant herein in her individual capacity. The surety bond and the commercial insurance or risk pool arrangement referred to in the previous paragraph waive any claim to governmental or sovereign immunity that this Defendant might claim in his official capacity.

10. Defendant, Southern Health Partners, Inc. (hereinafter "Defendant SHP") to Plaintiff's information and belief, is a foreign corporation licensed and doing business in Rockingham County, North Carolina with employees, servants and agents in Rockingham County, North Carolina, and which employed medical staff at the Rockingham County Detention Center and had a contract to provide medical care to inmates at the at the Rockingham County Detention Center.

11. Defendant, Elton J. Amos, Jr., M.D., (hereinafter "Defendant Amos") to Plaintiff's information and belief, is a citizen and resident of Wake County, North Carolina, and was at all material times and is employed as a Physician by

Defendant SHP at the Rockingham County Detention Center, and is being named as a defendant herein both as an employee of Defendant SHP and individually.

12. Defendant, Reginald Fennell, (hereinafter "Defendant Fennell") to Plaintiff's information and belief, is a citizen and resident of Wake County, North Carolina, and was at all material times and is employed as a Nurse Practitioner by Defendant SHP at the Rockingham County Detention Center, and is being named as a defendant herein both as an employee of Defendant SHP and individually.

## JURISDICTION, VENUE, AND NOTICE

13. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

14. This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and 42 U.S.C. § 1983 and 42 U.S.C. § 1988. The Jurisdiction of this Court is further invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201.

15. The court has jurisdiction pursuant to 28 U.S.C. §1343(3) (civil rights), and 28 U.S.C. §1331 (federal question).

16. This case is instituted in the United States District Court for the Middle District of North Carolina pursuant to 28 U.S.C. §1391 as the judicial

6

district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

17. Supplemental pendent jurisdiction is based on 28 U.S.C. §1367 because the violations of federal law alleged are substantial and the pendent causes of action derive from a common nucleus of operative facts.

**GENERAL ALLEGATIONS**

18. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

19. The Rockingham County Detention Center was built in 2010 with a design capacity for housing 239 inmates. It consists of several administration offices, a public lobby, visitation area, Booking and Releasing areas, a Medical Station, and various Inmate Housing Blocks. The primary purpose of the Detention Facility (commonly referred to as the "County Jail") is to provide a secure confinement facility for the housing of inmates who are in "pending trial" status and those inmates serving short term misdemeanor sentences. On his website, Defendant Sheriff Page represents that the Detention Center will provide a humane, safe, and healthy environment for staff and inmates, will maintain proper computerized records on inmates, secure inmates' personal property and will tend to inmate medical needs.

7

20. Defendant Sheriff Page has the full legal authority and responsibility for operating the Rockingham County Detention Center. Defendant Sheriff Page delegates the responsibility for operations of the Detention Center to the Administrator of Detention Services who was Defendant Bullins at all times material hereto.

21. Defendant Sheriff Page, by and through his Deputies and Officers, is responsible for directing the operation of the Rockingham County Detention Center including the supervision of the detention staff, overseeing inmate medical care, and adhering to department policies and procedures to insure the security, safety and well-being of employees and inmates.

22. In accordance with 10A N.C.A.C. 14J.0203, the operations of the Rockingham County Detention Center are governed by the following industry standards:

> (1)   Appalachian State University, Model Policies and Procedures Manual for North Carolina Jails; 10A N.C.A.C. 14J.0203;
>
> (2)   American Correctional Association, Standards for Adult Local Detention Facilities;
>
> (3)  American Correctional Association, Standards for Small Jails; and

(4) National Commission on Correctional Health Care, Standards for Health Services in Jails.

23. Under the United State Constitution and the North Carolina State Constitution, the Sheriff has a non-delegable duty to provide adequate medical care, including adequate and proper mental health screenings to inmates detained at the Rockingham County Detention Center operated by the Sheriff.

24. The Sheriff, Sheriff Deputies, and Detention Center Staff knew, or should have known, that deliberate indifference to the serious mental health needs of an inmate constitutes cruel and unusual punishment and the unnecessary and wanton infliction of pain in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

25. Defendant SHP assumed responsibility for providing medical care to inmates and detainees at the Rockingham County Detention Center pursuant to a contract entered with or on behalf of the Sheriff and Defendant SHP employed Defendant Amos and Defendant Fennell to provide medical care to inmates and detainees at the Detention Center. These Defendants had the authority to order Special Watch Monitoring of suicidal inmates and increased observational rounds and/or protective custody for suicidal inmates.

9

26. Defendant Sheriff Page, by and through his employees, agents, servants Deputies, Officers and Defendant Bullins, Defendant Martin, Defendant Stultz, Defendant Boyd, Defendant Holloway, Defendant SHP, Defendant Amos and Defendant Fennell, failed to provide adequate mental health screenings and care, and other protections for Kyle Barrett Kepley, thereby proximately causing his death by suicide on May 3, 2022.

27. In accordance with 10A N.C.A.C. 14J.0601, and pursuant to state law and applicable policies and procedures, Defendant Sheriff Page is required to have a minimum of two (2) observational rounds of the inmates performed per hour at irregular intervals. If an inmate has special needs, including but not limited to, suicidal tendencies, suffering from the effects of drugs, acting erratically, acting depressed or withdrawn, being mentally ill or having medical problems, or having a history of mental illness or suicidal tendencies, Defendant Sheriff Page is required to have a minimum of four (4) observational rounds of the inmates performed per hour.

28. Defendant Sheriff Page delegated responsibility for overseeing operations of the Rockingham County Detention Center to Defendant Bullins, who was responsible for insuring that state law and regulations, policies and procedures

were followed regarding inmate medical care and the completion of observational rounds.

29. Defendant Sheriff Page, by and through his employees, agents, servants Deputies, Officers and Defendant Bullins, Defendant Martin, Defendant Stultz, Defendant Boyd, Defendant SHP, Defendant Amos and Defendant Fennell, failed to comply with the above-referenced law and regulations and applicable policies and procedures regarding observational rounds, thereby proximately causing Kyle Kepley's death by suicide on May 3, 2022.

## STATEMENT OF FACTS

30. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

31. On April 30, 2022, Kyle Barrett Kepley was arrested by the Reidsville Police Department for failing to appear for a prior hearing on several non-violent traffic offenses.

32. After his arrest, Kyle Barrett Kepley was transported to the Rockingham County Detention Center and processed and booked into the facility by Officer Mark Samuel Martin, Jr. in the early morning hours on May 1, 2022. Officer Martin noted that Kyle Kepley was epileptic and lived with his Mother.

33. A little after 1:00 a.m. on May 1, 2022, Officer Martin completed a Medical Screening Intake for Kyle Barrett Kepley, wherein he erroneously indicated, among other things, that Kyle Kepley did not appear to be under the influence of drugs or alcohol and was not showing visible signs of alcohol or drug withdrawal. The Medical Screening Completed by Officer Martin also indicated that Kyle Kepley had friends or relatives in Rockingham County and that his being jailed would be an embarrassment to his family. Officer Martin also noted in the Medical Screening that Kyle Kepley said he had a pacemaker but did not have heart disease, however, Officer Martin did not seek to explain, clarify or resolve this material discrepancy and red flag.

34. On May 1, 2022, Kyle Kepley's friend called the Rockingham County Sheriff's Office and spoke with Charvene Holloway who was employed as an Administrative Assistant by the Sheriff or County on behalf of the Sheriff. Kepley's friend told Charvene Holloway that Kyle Kepley had been booked into the Rockingham County Detention Center, had mental health problems and that he was suicidal. Charvene Holloway told the friend that she would give this information to the jail staff. Charvene Holloway failed to provide the jail staff with the information that Kyle Kepley had mental health problems and was suicidal.

Alternatively, Charvene Holloway provided the jail staff with this information but they failed to take action to protect Kyle Kepley.

35. On May 1, 2022, after being booked into the facility, Kyle Kepley was out of his cell in the common area sitting at a table. Kepley was confused and told Officer Martin that he had release papers even though there were no such papers visible and none had been prepared. Without Kepley exhibiting any aggressive or violent behavior, Officer Martin then used excessive force, grabbing and lifting Kepley by the throat and slamming him to the concrete floor before placing Kepley in his cell alone. Defendant Martin failed to take any steps to establish a Special Watch, including suicide monitoring, for Kyle Kepley.

36. At approximately 9:10 a.m. on May 2, 2022, Kyle Kepley was seen by Defendant Fennell, a Nurse Practitioner employed by Defendant SHP and assigned to the Rockingham County Detention Center. Upon information and belief, Defendant Fennell consulted with Defendant Amos who is a medical doctor employed by Defendant SHP and assigned to the Rockingham Detention Center. Defendant Fennell and Defendant Amos started Kyle Kepley on opiate withdrawal monitoring until Kyle Kepley became "stable". They prescribed suboxone for opiate withdrawal, Phenergan for nausea, Loperamide for diarrhea, and Ibuprofen

for pain. Defendant Fennell and Defendant Amos failed to order a Special Watch, including suicide monitoring, for Kyle Kepley.

37. On May 2, 2022 at approximately 1:20 p.m., Defendant Stultz took Kyle Kepley to see the medical staff of Defendant SHP because Kyle Kepley said he was having chest pain, had a pacemaker and that someone was controlling the pacemaker in his head. Defendant Stultz heard and observed this delusional, psychotic behavior by Kyle Kepley. Defendant Stultz failed to take any steps to establish a Special Watch, including suicide monitoring, for Kyle Kepley.

38. Defendant Fennell completed a History and Physical and noted that Kyle Kepley said he was having chest pain, had a pacemaker and that someone was controlling the pacemaker in his head. However, Defendant Fennell determined that Kyle Kepley did not have a pacemaker. Defendant Fennell also noted that Kyle Kepley had medical issues, including Attention Deficit Hyperactivity Disorder, and that he last took his Adderall medication two days earlier. Defendant Fennell further noted that Kyle Kepley appeared overly anxious, afraid or angry.

39. Despite knowing that Kyle Kepley was psychotic and having paranoid delusions, had a history of opiate addiction and was actively going through opiate withdrawal which made him unstable, Defendant Amos and Defendant Fennell failed to order a suicide watch, protective custody or increased observational

rounds for Kyle Kepley. Defendant Amos and Fennel also failed to have Kyle Kepley seen by a qualified mental healthcare provider, including at an outside hospital, and failed to prescribe appropriate medication, such as anti-psychotic medication.

40. On the evening of May 2, 2022 into the early morning hours of May 3, 222, Defendant Boyd was on duty and assigned to F Pod where Kyle Kepley was housed in Cell F216. Upon information and belief, Defendant Boyd knew that since being booked into the Detention Center Kyle Kepley had made delusional, psychotic statements about having chest pain and a pacemaker that was being controlled by someone else and that he repeatedly made delusional statements that his release papers had been prepared and he was going home even though that was not true.

41. Further, Defendant Boyd knew Kyle Kepley was repeatedly yelling and banging on his cell door and pressing the call button, repeatedly making delusional, psychotic statements to Defendant Boyd that his release papers had been prepared and he was going home even though that was not in fact true. Defendant Boyd responded to Kyle Kepley's yelling and banging on his cell door multiple times, including around 11:00 p.m. on May 2, 2022.

42. Defendant Boyd knew, or should have known, that Kyle Kepley was on drug withdrawal monitoring and should have been placed on an increased special observational round protocol. Defendant Boyd knew that Kyle Kepley was making delusional, psychotic statements throughout the evening of May 2, 2022.

43. At approximately 11:30 pm on May 2, 2022, Defendant Boyd talked to Kyle Kepley through his cell door window and observed Kepley laying on his mattress on the floor. Upon information and belief, Kyle Kepley said he was going home and wanted to die. The facts and circumstances of Kyle Kepley's situation and conduct should have triggered a Special Watch involving at least four (4) observational rounds per hour.

44. Despite the foregoing, Defendant Boyd thereafter failed to perform any observational rounds of Kyle Kepley for over an hour even though State Law requires a minimum of two (2) observational rounds per hour.

45. Defendant Boyd performed his next observational round at approximately 12:50 a.m. on May 3, 2022. At that time, he found Kyle Kepley hanging from the top bunk with a sheet around his neck. Kyle Kepley did not have a pulse at that time and was declared deceased a short time later by County EMS.

46. Upon information and belief, Kyle Kepley made delusional statements in the presence of Defendants Martin, Stultz and Boyd, evidencing his psychotic state

of mind, stating that his release papers had been prepared and he was going home even though that was not the case. All these Defendants failed to order a suicide watch, protective custody or increased observational rounds for Kyle Kepley.

47. Before Kyle Kepley's death on May 3, 2022, the Rockingham Detention Center had a history of multiple deaths associated with a failure to comply with state law on observational rounds. Specifically, Defendant Sheriff Page and Defendant Bullins failed to comply with state law requirements on minimum observational rounds in connection with the following prior inmate deaths: Frank Kirk who purportedly died of natural causes on 7/2/21; Seth King who died of suicide by hanging on 2/15/21; and Ashley Eggleston who died of suicide by hanging on 2/8/21. Inmates continue to die at the County Jail. As recently as March 25, 2024, another unidentified female inmate died by suicide at the Rockingham Detention Center.

48. Before Kyle Kepley's death on May 3, 2022, Defendant Sheriff Page knew that the Rockingham County Detention Center was not complying with state law on observational rounds. In connection with the deaths of Frank Kirk, Seth King and Ashley Eggleston listed above, Defendant Sheriff Page received separate notices from the North Carolina Department of Health and Human Services - Construction Division, the state agency that inspects jails including as part of death

17

investigations, advising him that the Detention Center was not complying with state law on observational rounds.

49.  Acting through Defendant Bullins, Defendant Sheriff Page admitted that the Detention Center was not complying with state law on observational rounds prior to Kyle Kepley's death on May 3, 2022.

50. Before Kyle Kepley's death on May 3, 2022, and acting through Defendant Bullins, Defendant Sheriff Page represented to the North Carolina Department of Health and Human Services - Construction Division that the problems causing non-compliance with state law on observational rounds had been identified and corrected so that the Detention Center would be in compliance with state law on observational rounds.

51. Upon information and belief, all Defendants were on duty at various times from May 1st through May 3rd, 2022, and knew or should have known of Kyle Kepley's severe and significant mental health symptoms but negligently, grossly negligently, willful and wantonly, consciously, deliberately, and recklessly failed to provide adequate mental health care to Kyle Kepley for his severe and obvious mental health needs.

52. Upon information and belief, all Defendants knew, or should have reasonably known, that Mr. Kepley was suffering from delusional thoughts and

18

psychosis and posed a significant suicide risk. The Defendants breached the duty of care owed Kyle Kepley and were consciously and deliberately indifferent to his serious mental health medical needs, which proximately caused his death on May 3, 2024.

53. Defendants negligently, grossly negligently, willful and wantonly, consciously, deliberately, and recklessly failed to place Kyle Kepley on a Special Watch, including a suicide watch, when it was clear that he was mentally unstable and a risk to himself.

54. The Defendants, jointly and severally, exhibited conscious and deliberate indifference to the serious mental health needs of Kyle Kepley by failing to provide proper mental health assessments, causing the unnecessary and wanton infliction of pain, and proximately causing his death on May 3, 2022, all in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

55. As a result of the Plaintiff's decedent's death, the Plaintiff is entitled to recover all wrongful death damages allowed by North Carolina law for violation of 42 U.S.C. § 1983 including reasonable compensation for attorney's fees pursuant to 42 U.S.C. § 1983.

56. Further, Defendant Martin used unjustified excessive force in assaulting Kyle Kepley in violation of his 4th Amendment Constitutional rights, causing personal injury to Kyle Kepley before his death, and as a result, the Plaintiff is entitled to recover all survival action damages allowed by North Carolina law for violation of 42 U.S.C. § 1983 including reasonable compensation for attorney's fees pursuant to 42 U.S.C. § 1983.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS SHERIFF PAGE, BULLINS, MARTIN, STULTZ, BOYD, HOLLOWAY, SHP, AMOS AND FENNELL  FOR VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. §§ 1983 and 1988 (Deliberate Indifference to Medical Needs)**

57. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

58. Defendants acted with deliberate indifference to Kyle Kepley's serious mental health needs of which they were actually aware or reasonably should have been aware.

59. The right to a reasonable assessment and medical treatment while in confinement is a clearly established constitutional right pursuant to the Eighth and Fourteenth Amendments to the United States Constitution, which all Defendants were actually aware or reasonably should have been aware of.

20

60.  Defendants failed to take adequate steps to ensure Kyle Kepley's safety in the Rockingham County Detention Center.  The Eighth Amendment "imposes duties on [] officials [to] provide humane conditions of confinement . . . and [to] 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment," Farmer, 511 U.S. at 828, or in the case of pre-trial detainees, the Fourteenth Amendment, see, e.g., Muhaimin v. Jacobs, 2016 U.S. Dist. LEXIS 106330, at *5 (D.S.C. 2016) (stating that "the standards discussed in Farmer v. Brennan are equally applicable" in cases involving pre-trial detainees).

61.  Defendants consciously and deliberately failed to appropriately respond to obvious signs of suicidality in Kyle Kepley and failed to follow state law and regulations on required observational rounds, all of which proximately caused Kyle Kepley to suffer and die by suicide.

62.  Kyle Kepley did not receive an adequate mental health assessment at intake and did not receive any meaningful mental health assessment or care throughout his period of detention at the Rockingham County Detention Center.

63. Defendants violated Kyle Kepley's rights under the United States Constitution, including rights secured by the Eighth and Fourteenth Amendments, or federal law, by intentionally, willfully, maliciously, and with conscious and deliberate indifference, failing to act when they knew or should have known the Kyle Kepley was suicidal and at a substantial risk of serious harm, and by consciously and deliberately disregarding such risk by failing to take reasonable measures, which were readily available to avoid that risk, including by failing to provide adequate medical care for his serious mental health needs and by failing to conduct observational rounds, including a suicide watch, in compliance with state law.

64. Defendants' acts and/or omissions were the legal and proximate cause of violations of Kyle Kepley's Federal and State Constitutional Rights and his death.

65. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of Defendants, jointly and severally, the Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering of Kyle Kepley prior to his death and all wrongful death damages.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS SHERIFF PAGE AND BULLINS FOR VIOLATION OF THE EIGHTH AND**

**FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION AND 42 U.S.C. §§ 1983 and 1988
(Deliberate Indifference to Medical Needs-
Unconstitutional Policies-Monell Violation)**

66.     Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

67.     Defendant Sheriff Page was responsible for the formulation and execution of policies and procedures regarding the conditions of confinement of detainees at the Rockingham County Detention Center and he delegated responsibility for the same to Defendant Bullins.

68.     At all relevant times, Defendants Sheriff Page and Bullins were acting under color of State law, had in effect express and/or de facto policies, practices, procedures and customs that were a direct and proximate cause of the wrongful, unconstitutional, and unlawful conduct of officers and other care providers who worked at the Rockingham County Detention Center.

69.     Defendants Sheriff Page and Bullins had express and/or de facto policies, practices, procedures and customs of not providing adequate mental health care screenings and care to inmates at the Rockingham County Detention Center.

70.     Defendants Sheriff Page and Bullins had express and/or de facto policies, practices, procedures and customs at the Rockingham County Detention

23

Center of not conducting observational rounds in compliance with state law and regulations, including Special Watch monitoring for suicidal inmates.

71. Defendants Sheriff Page and Bullins' express and/or de facto policies, practices, procedures and customs at the Rockingham County Detention Center placed Kyle Kepley at an unreasonable and foreseeable risk of serious harm.

72. Defendants Sheriff Page and Bullins' express and/or de facto policies, practices, procedures and customs at the Rockingham County Detention Center constituted deliberate indifference to the serious medical and mental health needs of Kyle Kepley, of which these Defendants were or had reason to be aware of, and they violated the Cruel and Unusual Punishments Clause of the Eighth Amendment, made applicable to the states through the Fourteenth Amendment to the United States Constitution. Estelle v. Gamble, 429 U.S. 97, 104 (1976).

73. Defendants Sheriff Page and Bullins acted with conscious and Deliberate disregard for the Constitutional and Civil Rights of inmates at the Rockingham County Detention Center, including Kyle Kepley, in setting and enacting express and/or de facto policies, practices, procedures and customs of not providing adequate mental health care screenings and care to inmates, and of not conducting observational rounds in compliance with state law and regulations, including Special Watch monitoring for suicidal inmates.

74. Before Kyle Kepley's death on May 3, 2022, other inmates died at the Rockingham County Detention Center due to Defendants Sheriff Page and Bullins' policies described above such that these Defendants have engaged in a pattern and practice of Constitutional and Civil Rights law violations at the Rockingham County Detention Center.

75. Defendants Sheriff Page and Bullins' acts and/or omissions in setting and enacting the afore-mentioned express and/or de facto policies, practices, procedures and customs at the Rockingham County Detention Center were the legal and proximate cause of violations of Kyle Kepley's Federal and State Constitutional Rights and his death.

76. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of Defendants Sheriff Page and Bullins, the Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering of Kyle Kepley prior to his death and all wrongful death damages.

**THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS SHERIFF PAGE AND BULLINS FOR VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. §§ 1983 and 1988 (Failure to Train & Supervise-Monell Violation)**

77. Plaintiff repeats, re-alleges, and re-asserts each and every allegation

set forth in the preceding paragraphs as if fully set forth herein.

78. Defendants Sheriff Page and Bullins were acting in a governmental capacity at the time of Kyle Kepley's death, and failed to properly train and supervise their employees and subordinates to recognize and appropriately respond to mental health care emergencies, including suicide ideation.

79. Defendants Sheriff Page and Bullins were acting in a governmental capacity at the time of Kyle Kepley's death, and failed to properly train and supervise their employees and subordinates to conduct observational rounds in compliance with state law and regulations, including Special Watch Monitoring for suicidal inmates.

80. Before Kyle Kepley's death on May 3, 2022, other inmates died at the Rockingham County Detention Center due to Defendant Sheriff Page and Bullins' failure to train and adequately supervise their employees and subordinates such that these Defendants have engaged in a pattern and practice of Constitutional and Civil Rights law violations at the Rockingham County Detention Center.

81. Defendants' policies, customs, and practices in failing to adequately supervise and train their employees were the proximate and legal causes of violations of Kyle Kepley's Federal and State Constitutional Rights and his death.

82. As a direct and proximate result of the aforesaid constitutional

violations, civil rights violations and misconduct of Defendants Sheriff Page and Bullins, the Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering of Kyle Kepley prior to his death and all wrongful death damages.

**FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS SHERIFF PAGE AND BULLINS FOR VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND  42 U.S.C. §§ 1983 and 1988 (Failure to Maintain Equipment & Inadequate Staffing-Monell Violation)**

83.     Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

84.     Defendants Sheriff Page and Bullins were acting in a governmental capacity at the time of Kyle Kepley's death, and had an express and/or de facto policy, procedure, practice and/or custom of not properly servicing, maintaining and monitoring the equipment, computers and software utilized in implementing, recording and documenting that observational rounds were being conducted in compliance with state law and regulations, and had a similar policy of not adequately staffing the Detention Center.

85.     Before Kyle Kepley's death on May 3, 2022, other inmates died at the Rockingham County Detention Center due to Defendant Sheriff Page and Bullins' above-described policies such that Defendants have engaged in a pattern and

27

practice of Constitutional and Civil Rights law violations at the Rockingham County Detention Center.

86. Defendants Sheriff Page and Bullins' above-described policies were the proximate and legal causes of violations of Kyle Kepley's Federal and State Constitutional Rights and his death.

87. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of Defendants Sheriff Page and Bullins, the Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering of Kyle Kepley prior to his death and all wrongful death damages.

**FIFTH CLAIM FOR RELIEF AGAINST**
**DEFENDANTS SHERIFF PAGE, BULLINS, MARTIN, STULTZ,**
**BOYD, HOLLOWAY, SHP, AMOS AND FENNELL**
**AND HIS JAIL STAFF, OFFICERS AND DEPUTIES**
**(INJURY TO PRISONER UNDER N.C.G.S. § 162-55)**

88. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

89. Defendant Sheriff Page is duly charged as the keeper of the jail in Rockingham County pursuant to N.C.G.S. § 162-55 and has appointed, hired, retained and assigned Deputies, Officers, employees, agents and servants,

including co-Defendants, to assist him in performing his official duties per N.C.G.S. § 162-24.

90.     Defendant Sheriff Page and the other Defendants failed to ascertain Kyle Kepley's mental health status upon his commitment to Rockingham County Detention Center, failed to provide adequate mental healthcare and failed to conduct proper observational rounds of Kyle Kepley to prevent him from causing harm to himself.

91.     The actions of Defendant Sheriff Page, his jail staff, Officers and Deputies, employees, sevants and agents, including the co-Defendants, were in violation of N.C.G.S. § 162-55.

92.     Defendant Sheriff Page, his jail staff, Officers and Deputies and the co-Defendants, were reckless and careless and showed conscious and deliberate indifference to the rights and safety of Kyle Kepley by not insuring that the Rockingham County Detention Center had full information about Kyle Kepley's psychosis and opioid withdrawal.

93.     Defendant Sheriff Page, his jail staff, Officers and Deputies and the co-Defendants, were reckless and careless and showed conscious and deliberate indifference to the rights and safety of Kyle Kepley by not adequately evaluating

Kyle Kepley and providing adequate observation to insure that Kyle Kepley did not harm himself.

94.     The acts or omissions of all Defendants were the legal and proximate Cause of violations of Kyle Kepley's Federal and State Constitutional Rights and his death.

95.     As a direct and proximate result of the aforesaid acts, omissions and misconduct of Defendants, jointly and severally, the Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death, lost earnings, medical expenses, and wrongful death damages.

## SIXTH CLAIM FOR RELIEF AGAINST
## DEFENDANTS SHERIFF PAGE, SHP, AMOS AND FENNEL
## (MEDICAL MALPRACTICE)

96.     Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

97.     Defendants, jointly and severally, exhibited deliberate indifference to the serious medical needs of Kyle Kepley by failing to provide adequate medical care, causing the unnecessary and wanton infliction of pain, and proximately causing his death on May 3, 2022, all in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

98.     Defendant Sheriff Page who has a non-delegable duty to provide inmates, including Kyle Kepley, with adequate medical care, and Defendants SHP, Amos and Fennell who were the medical care providers at the Rockingham County Detention, jointly and severally, committed medical malpractice in violation of N.C. Gen. Stat. § 90-21.12 by failing to provide adequate mental healthcare to Kyle Kepley, thereby proximately causing his death on May 3, 2022.

99.     Plaintiff objects to the pre-filing requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure. Rule 9(j) which effectively requires plaintiff to prove her case before factual discovery is even begun, denies medical malpractice plaintiffs their rights of due process of law and equal protection under the law, the right to open courts, and the right to a jury trial, violates the separation of powers, and confers an exclusive emolument on health care providers, in violation of the United States and North Carolina constitutions. Rule 9(j) violates the Seventh and Fourteenth Amendments of the United States Constitution, and Article I, sections 6, 18, 19, 25 and 32 and Article IV, sections 1 and 13 of the North Carolina Constitution.

100.    Plaintiff objects to the requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure on the grounds that a Rule 9(j) certification is not required in this case, pursuant to Lewis v. Setty, 130 N.C. Capp. 606, 503 S.E.2d

673 (1998), appeal after remand, 140 N.C. App. 536, 537 S.E.2d 505 (2000); and Taylor v. Vencor, Inc., 136 N.C. App. 528, 525 S.E.2d 201 (2000). Plaintiff further objects that the pleading requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure. Rule 9(j) do not apply to an action filed in Federal Court.

101. Without waiving these objections, counsel for plaintiff provides the following information to comply with the requirements of Rule 9(j): the medical care rendered by Defendants SHP, Amos and Fennell, for which Defendant Sheriff Page is vicariously liable based on his non-delegable duty to provide adequate medical care to the inmates in his custody, and all medical records pertaining to the alleged negligence that are available to plaintiff after reasonable inquiry have been reviewed before the filing of this complaint by person (s) who are reasonably expected to qualify as an expert witnesses under Rule 702 of the North Carolina Rules of Evidence and who are willing to testify that the care provided by these Defendant did not comply with the applicable standard of care.

102. The medical care and all medical records pertaining to the alleged negligence that are available to Plaintiff after reasonable inquiry were reviewed by persons, prior to the filing of the original Complaint and these persons were reasonably expected to qualify as experts under Rule 702 of the Rules of Evidence at the time of and prior to the filing of the original Complaint, and at the time of

and prior to the filing of the aforementioned original Complaint these persons were willing to testify that the medical care in this case did not comply with the applicable standard of care. These persons continue to be willing to testify that the medical care in this case did not comply with the applicable standard of care.

103.     This pleading, however, also alleges facts establishing breaches of common-law duties and violations of Kyle Kepley's Constitutional Rights under the United States Constitution and the Constitution of the State of North Carolina, for which certification of compliance with Rule 9 (j) is not required. In particular, some of the claims against Defendants did not allege medical malpractice by health care. These claims fall outside of the requirements of Rule 9 (j) of the North Carolina Rules of Civil Procedure, and as such, compliance with Rule 9 (j) with respect to these claims is not required.

102.   If the Court later determines that plaintiffs 9(j) expert does not meet the requirements of Rule 702(b) or Rule 702(c), plaintiff will seek to have that person qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence, and plaintiff hereby moves the Court, pursuant to Rule 9(j)(2), to so qualify that person.

103.   At all relevant times, Defendants had a duty to provide Kyle Kepley

with medical care and treatment in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities under the same or similar circumstances.

104.   In providing Kyle Kepley with medical and mental health care, Defendants failed to exercise reasonable care and diligence in the application of their knowledge and skill to Kyle Kepley's care; failed to use their best judgment in the treatment and care of Kyle Kepley; and failed to provide medical care in accordance with the standards of practice among members of the same health care profession with similar training and experience in the same or similar communities under the same or similar circumstances, in, but not limited to, the following respects:

a. failure to properly assess the mental condition and risk of self- harm or suicide of Kyle Kepley;

b. failure to adequately monitor Kyle Kepley, and otherwise provide an environment which would minimize the risk of suicide or self-harm by him;

c. failure to provide Kyle Kepley with necessary mental health treatment such as counseling, therapy, medication, and drug withdrawal treatment;

d. failure to recognize and classify Kyle Kepley as a high-risk inmate who should have been placed under heightened observation protocols with constant, remote video monitoring and in-person supervision rounds occurring at least four times per hour;

e. failure to implement and follow appropriate mental health procedures by supplying suicide-enabling materials to Kyle Kepley, such as a bed sheet, and permitting him use and unsupervised possession of these materials, particularly in light of his known suicidal tendencies;

f. failure to properly document Kyle Kepley's condition in his written medical notes and failure to adequately observe or supervise Kyle Kepley; and

g. failure to protect Kyle Kepley from his suicidal tendencies, despite Defendants' knowledge of such tendencies and the obvious risk and gravity of harm associated with the same.

105.   As a direct and proximate result of the aforementioned negligence and conduct of Defendants, Kyle Kepley suffered physically and mentally and died by suicide.

106.   As a result of the Plaintiff's decedent's death, the Plaintiff is entitled

to recover compensatory damages per the survival statute and wrongful death damages, as well as all damages allowed by North Carolina law for violation of 42 U.S.C. § 1983 including reasonable compensation for attorney's fees pursuant to 42 U.S.C. § 1983.

107.   As a direct and proximate result of the aforesaid acts, omissions and misconduct of Defendants, jointly and severally, the Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death and wrongful death damages.

### SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT SHP (Failure to Train & Supervise and Inadequate Staffing)

108.   Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

109.   Defendant SHP had a duty to train and supervise the healthcare providers hired, retained and assigned to provide healthcare services, including mental health services, to inmates at the Rockingham County Detention Center.

110.   Defendant SHP had a duty to provide adequate staff for providing healthcare services, including mental health services, to inmates at the Rockingham County Detention Center.

111.   Defendant SHP breached these duties by failing to adequately staff,

train and supervise the healthcare providers assigned to the Rockingham County Detention Center, including, but not limited to, by failing to:

a. adequately train and supervise on the proper method for assessing mental conditions and the risk of self- harm or suicide of inmates;

b. adequately train and supervise on the proper method of adequately monitoring and otherwise providing an environment which would minimize the risk of suicide or self-harm by inmates;

c. adequately train and supervise regarding the necessary mental health treatment, such as counseling, therapy, medication, and drug withdrawal treatment;

d. adequately train and supervise on methods for recognizing and classifying high-risk inmates who should be placed under heightened observation protocols with constant, remote video monitoring and in-person supervision rounds occurring at least four times per hour;

e. adequately train and supervise on the appropriate mental health procedures for not supplying at risk inmates with suicide-enabling materials, such as bed sheets, particularly in light of any known suicidal tendencies;

f. adequately train and supervise to properly document inmates' mental health conditions in their written medical records;

37

g.  adequately train and supervise on protecting inmates from any suicidal tendencies and the obvious risk and gravity of harm associated with the same; and

h.  adequately staff the Rockingham County Detention Center with: i) a sufficient number of medical providers; ii) medical providers who are available a sufficient number of hours; and iii) qualified mental health providers.

112.   As a direct and proximate result of the aforementioned negligence and conduct of Defendant SHP, Kyle Kepley suffered physically and mentally and died by suicide.

113.   As a result of the Plaintiff's decedent's death, the Plaintiff is entitled to recover compensatory damages per the survival statute and wrongful death damages, as well as all damages allowed by North Carolina law for violation of 42 U.S.C. § 1983 including reasonable compensation for attorney's fees pursuant to 42 U.S.C. § 1983.

114.   As a direct and proximate result of the aforesaid acts, omissions and misconduct of Defendant SHP, the Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death and wrongful death damages.

## **EIGHTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
## **WRONGFUL DEATH ACTION PURSUANT TO N.C.G.S. § 28-174**

115. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

116. This is an action for damages against Defendants for wrongful death of the Plaintiff's decedent, Kyle Kepley.

117. As a direct and proximate result of Defendants' negligence, gross negligence, willful and wanton conduct, and deliberate and reckless indifference for the safety and mental health conditions of Kyle Kepley, he suffered pain and mental suffering and eventually died from a lack of adequate mental healthcare.

118. As a result of Kyle Kepley's death, the Plaintiff is entitled to recover all damages allowed under the North Carolina Wrongful Death Statute including the following damages, to wit:

      a.    Compensation for pain and suffering of the decedent;

      b.    The reasonable funeral expense of the decedent;

      c.    The monetary value of the decedent to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected:

            i.    Net income of the decedent,

ii.     Services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered;

iii.    Society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered;

d.      Such punitive damages as the decedent could have recovered had he survived, and punitive damages for wrongfully causing the death of the decedent through maliciousness, willful or wanton injury, or gross negligence;

e.      Nominal damages when the jury finds.

119.    As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of the Defendants, jointly and severally, the Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death and wrongful death damages.

## NINTH CLAIM FOR RELIEF AGAINST DEFENDANT MARTIN (EXCESSIVE FORCE AND ASSAULT)

120.    Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

121.   Defendant Martin deprived Kyle Williams of the rights, privileges and immunities secured by the United States Constitution and laws of the United States by subjecting him to excessive force under the Fourth Amendment.

122.   Defendant Martin's grabbing Kyle Kepley by the throat and throwing him to the concrete floor was unreasonable under the circumstances.

123.   Defendant Martin knew, or should have reasonably known, that his use of that type and amount of force under the circumstances was likely to cause unnecessary harm to Kyle Kepley.

124.   Defendant Martin knew, or should have reasonably known, that his use of that type and amount of force under the circumstances was clearly unconstitutional and a violation of Kyle Kepley's Fourth Amendment Constitutional Rights.

125.   Defendant Martin's use of force under the circumstances was not justified, and was excessive and unreasonable.

126.   As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of the Defendant Martin, the Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00) for pain and suffering prior to his death.

WHEREFORE, Plaintiff, Melissa Efird, as Personal Representative of the Estate of Kyle Kepley, prays the Court enter a judgement and award against Defendants, jointly and severally, as follows:

1. That Plaintiff have and recover of the Defendants, jointly and severally, compensatory damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00) for damages, together with interest at the legal rate;

2. That all issues of fact be tried by a jury;

3. That the costs of this action, including reasonable attorney's fees, be taxed against the Defendants, jointly and severally; and

4. For such other and further relief as to the Court may seem just and proper.

This the 17th day of April, 2024.

/s/ David J. Ventura
David J. Ventura
NC State Bar No.:  34898
/s/ Karonnie R. Truzy
Karonnie R. Truzy
NC State Bar No. 28228
CR Legal Team, LLC
1051 E. Morehead Street, Suite 100
Charlotte, NC  28204
Office:  704-567-4529 Ext. 1928
Facsimile:  704-749-2977
*Attorneys for the Plaintiff*

# STATE OF NORTH CAROLINA

File No.

22 E 555

ROCKINGHAM ——— County

In The General Court Of Justice
Superior Court Division
Before the Clerk

| IN THE MATTER OF THE ESTATE OF: | |
|---|---|

*Name*
KYLE BARRETT KEPLEY

## LETTERS

OF ADMINISTRATION

G.S. 28A-6-1; 28A-6-3; 28A-11-1; 36C-2-209

The Court in the exercise of its jurisdiction of the probate of wills and the administration of estates, and upon application of the fiduciary, has adjudged legally sufficient the qualification of the fiduciary named below and orders that Letters be issued in the above estate.

The fiduciary is fully authorized by the laws of North Carolina to receive and administer all of the assets belonging to the estate, and these Letters are issued to attest to that authority and to certify that it is now in full force and effect.

Witness my hand and the Seal of the Superior Court.

*Name And Address Of Fiduciary 1*
MELISSA EFIRD A/K/A MELISSA O. EFIRD
167 OAK LEAF DR.
REIDSVILLE, NC 27320

*Date Of Qualification*
06/24/2022

*Clerk Of Superior Court*
J. MARK PEGRAM

*Title Of Fiduciary 1*
ADMINISTRATOR

**EX OFFICIO JUDGE OF PROBATE**

*Name And Address Of Fiduciary 2*

*Date Of Issuance*
06/24/2022

*Signature*
Janice M. Ellington

*Title Of Fiduciary 2*

SEAL

☐ Deputy CSC   ☒ Assistant CSC   ☐ Clerk Of Superior Court

**NOTE:** *This letter is not valid without the official seal of the Clerk of Superior Court.*

AOC-E-403, Rev. 7/06
© 2006 Administrative Office of the Courts

EXHIBIT A