IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MELISSA EFIRD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:24CV332 |
| | ) |
| ROCKINGHAM COUNTY SHERIFF | ) |
| SAMUEL SCOTT PAGE, et al., | ) |
| | ) |
| Defendants. | ) |

ORDER

This is a civil rights action filed under 42 U.S.C. § 1983 by Plaintiff Melissa Efird, mother and personal representative of the Estate of Kyle Barrett Kepley ("Kepley"), who died by suicide in May 2022 at the Rockingham County Detention Center ("RCDC"), where he was held as a pretrial detainee. Plaintiff filed the instant matter against nine defendants, including Rockingham County Sheriff Samuel Scott Page in his official capacity; four RCDC officers in their individual capacities; RCDC's contracted medical provider, Southern Health Partners, Inc. ("SHP"); and three medical providers employed by SHP, alleging violations of federal civil rights law and North Carolina law. In her Amended Complaint, Plaintiff alleges that officers and medical personnel at RCDC knew that Kepley was at a substantial risk of suicide, including that Kepley was going through opiate withdrawal, made delusional and psychotic statements, expressed that he wanted to die, and that one of Kepley's friends called the Rockingham County Sherrif's Office and told an employee there that Kepley struggled with his mental health and was suicidal, but that Defendants did not take action to reduce this

risk and instead placed him in a cell alone, did not institute a Special Watch, and did not conduct rounds to check on him for over an hour after he said he wanted to die. (Am. Compl. [Doc. #9] ¶¶ 34-43.) Plaintiff further alleges that the RCDC "had a history of multiple deaths associated with failure to comply with state law on observational rounds," including three recent suicides, and that it was the policy and practice of the RCDC not to conduct mental health screenings and not to conduct required rounds. (Am. Compl. ¶¶ 47-48, 66-76.)

This matter is before the Court on a Partial Motion to Dismiss by Defendants Sheriff Page, RCDC Officer Orin Spencer Stultz, and RCDC Officer Reid James Boyd, Sr. ("Moving Defendants") [Doc. #13]. For the foregoing reasons, Moving Defendants' Motion to Dismiss is granted in part and denied in part.

I. STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard does not require "detailed factual allegations," but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A claim is facially plausible when the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In this way, Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 500 U.S.

at 555, 570; see Iqbal, 556 U.S. at 680. The Court must accept as true all of the factual allegations contained in a complaint, but is not bound to accept legal conclusions. Iqbal, 556 U.S. at 678. Thus, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

II.  DISCUSSION

 A. Count 1: § 1983 Deliberate Indifference to Serious Medical Needs

Plaintiff asserts a claim under 42 U.S.C. § 1983 against Sheriff Page, sued in his official capacity,[1] and Officers Stultz and Boyd, sued in their individual capacities, alleging deliberate indifference to Kepley's serious medical needs in violation of the Eighth and Fourteenth Amendments. (Am. Compl. ¶¶ 58-59.) Moving Defendants assert that Plaintiff has not plausibly alleged that they violated Kepley's constitutional rights. (Defs.' Br. [Doc. #14] at 7-11.)[2]

The Fourteenth Amendment applies to claims of deliberate indifference by pretrial detainees. Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023). "To state a claim for deliberate indifference to a medical need, the specific type of deliberate indifference claim at issue in this case, a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the

---

[1] To the extent that Plaintiff asserts an official capacity claim against Sheriff Page in Count 1, the Court will treat the allegation as duplicative of the Monell claims in Counts 2, 3, and 4, addressed *infra*.
[2] For ease of reference, cited page numbers will refer to the sequential numbers generated by the Court's Electronic Case Filing ("ECF") system.

defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." Id. at 611. A detainee's "'substantial risk of suicide is certainly the type of 'serious harm' that is contemplated by the first prong of the deliberate indifference test.'" Id. at 612 (quoting Brown v. Harris, 240 F.3d 383, 389 (4th Cir. 2001)); Buffington v. Baltimore Cnty., 913 F.2d 113, 120 (4th Cir. 1990).

Notably, however, while Plaintiff pleaded the constitutional violation in Count 1 under the Eighth and Fourteenth Amendments, the Parties' briefing evaluates Plaintiff's constitutional claim only under the Eighth Amendment. Until recently, the standards for evaluating deliberate indifference to medical needs claims under the Eighth Amendment for a convicted prisoner and under the Fourteenth Amendment for a pretrial detainee were treated the same, but in Short v. Hartman, the Fourth Circuit held that the deliberate indifference standard under the Fourteenth Amendment is different from the Eighth Amendment standard. Short, 87 F.4th at 607. Now, a pretrial detainee "no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm" and must only show that the defendant's action or inaction was "objectively unreasonable." Id. at 611. Because Kepley was a pretrial detainee at the time he died, Plaintiff's constitutional claim is governed by Short's objective Fourteenth Amendment analysis, not the subjective test applied under the Eighth Amendment. In light of this recent change in standard, and given Plaintiff's allegations that all Defendants knew that Kepley was at a substantial risk of suicide and failed to act to protect him, and her factual allegations in support of this claim, including that Kepley

4

was going through withdrawal, was acting delusionally, and told an officer that he wanted to die, the Court will deny Moving Defendants' Motion to Dismiss as to Count 1 at this time to allow the Parties an opportunity to re-brief the constitutional issues under the Fourteenth Amendment standard and the guidance set out in the Fourth Circuit's decision in Short v. Hartman, 87 F.4th at 611-15.[3] Thus, Moving Defendants' Motion to Dismiss Count 1 is denied without prejudice. Given the factual allegations, and given that discovery is well underway, it may be most efficient to address these issues at summary judgment, but Moving Defendants may choose to re-brief the issue now under the appropriate standards or raise it instead at summary judgment.

B. Counts 2, 3, and 4: § 1983 Monell Liability

Plaintiff also asserts three municipal liability claims against Sheriff Page in his official capacity under Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978): in Count 2, Plaintiff alleges that there was a policy or custom at RCDC of failing to perform supervisory rounds in compliance with state law and failing to provide adequate mental health assessments and care (Am. Compl. ¶¶ 66-76); in Count 3, Plaintiff alleges that

---

[3] Although Plaintiff's underlying constitutional claim is governed by the Fourteenth Amendment objective analysis, the qualified immunity analysis may still require examining Defendants' subjective knowledge. See Mays v. Sprinkle, 992 F.3d 295, 301-02 (4th Cir. 2021); see also King v. Blackwood, No. 1:21CV383, Recommendation, Doc. #124 (M.D.N.C. Dec. 20, 2024) (allowing Monell claim to proceed after discovery), adopted in part, Order, Doc. #132 (Feb. 3, 2025), and Order, Doc. #169 (Feb. 13, 2025) (adopted in relevant part but denying qualified immunity at summary judgment). In any event, because Plaintiff's underlying constitutional claim is governed by the Fourteenth Amendment, the Court will allow the Parties time to brief the issue under the appropriate standard before ruling on the question of qualified immunity. The Court also notes that the decision in Short addresses other issues raised by the Parties in the briefing, and that guidance can be considered and addressed further in future briefing. See, e.g., Short, 87 F.4th at 613-15 ("In the absence of an allegation that Sergeant Morgan knew of and relied on a medical provider's evaluation *in the moment*, she cannot use the medical provider's inaction to justify her own post-hoc. We thus conclude that the Complaint sufficiently alleges that Sergeant Morgan was deliberately indifferent to Ms. Short's serious medical needs by failing to follow the steps outlined in the Prison Policy to mitigate Ms. Short's suicide risk.").

5

Sheriff Page failed to train and supervise his officers on how to respond to mental health care emergencies and how to conduct observational rounds in compliance with state law (Am. Compl. ¶¶ 77-82); and in Count 4, Plaintiff alleges that there was a policy or custom at RCDC of failing to maintain equipment required to document supervisory rounds and a policy of inadequate staffing at RCDC (Am. Compl. ¶¶ 83-87). Moving Defendants move to dismiss all three <u>Monell</u> Counts against Sheriff Page.

As noted above, the Court is allowing the Parties to re-brief the issue of the underlying constitutional violation alleged in Count 1 under the Fourteenth Amendment standard recently announced in <u>Short</u>. Because municipal liability requires an underlying constitutional violation by an individual, <u>see</u> <u>Grayson v. Peed</u>, 195 F.3d 692, 697-98 (1999); <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986), the Court will reserve its decision on the issue of <u>Monell</u> liability until the Parties have an opportunity to brief the underlying constitutional violation under the Fourteenth Amendment, and will address all of Plaintiff's constitutional claims at once. The Court further notes that consideration of the issues raised by Defendant Sheriff Page regarding <u>Monell</u> liability will likely involve consideration of matters outside the Amended Complaint, and would therefore need to be considered at summary judgment. <u>See also</u> <u>King v. Blackwood</u>, No. 1:21CV383, Recommendation, Doc. #124 (M.D.N.C. Dec. 20, 2024) (allowing <u>Monell</u> claim to proceed after discovery), <u>adopted in part</u>, Order, Doc. #132 (Feb. 3, 2025), and Order, Doc. #169 (Feb. 13, 2025) (adopted in relevant part but denying qualified immunity at summary judgment). The Court will therefore deny Moving Defendants' Motion to Dismiss Plaintiff's claims against Sheriff Page in Counts 2, 3, and 4, and Moving

6

Defendants may choose to re-brief the issue now under the appropriate standards or raise it instead at summary judgment.

C. Counts 5, 6, and 8: State Law Claims

Plaintiff brings several claims under North Carolina law against Sheriff Page in his official capacity and Officers Stultz and Boyd individually: in Count 5, Plaintiff alleges that Sheriff Page and Officers Boyd and Stultz violated North Carolina General Statue § 162-55, which prohibits injury to a prisoner by a jailer (Am. Compl. ¶¶ 88-95); in Count 6, Plaintiff brings a claim against Sheriff Page for vicarious liability under North Carolina's medical malpractice statute based on the conduct of the SHP personnel at RCDC (Am. Compl. ¶¶ 96-107); and in Count 8, Plaintiff advances a claim for wrongful death against Sheriff Page and Officers Stultz and Boyd (Am. Compl. ¶¶ 115-19).[4]

Moving Defendants first argue the Court should decline to exercise supplemental jurisdiction over these claims. (Defs.' Br. at 15-17.) However, because there are federal § 1983 claims over which the Court has jurisdiction, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(a). If no federal claims remain after summary judgment, it is likely that the Court would decline to exercise jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c)(3). The Court can therefore revisit that issue after consideration of any motions for summary judgment after the close of discovery.

---

[4] Plaintiff brings this claim under North Carolina General Statute § 28-174, but North Carolina's wrongful death statute is now located at North Carolina General Statute § 28A-18-2. The Court understands Plaintiff to have intended to bring a claim under § 28A-18-2.

7

Moving Defendants additionally argue that their liability is limited by the doctrines of governmental immunity and public official immunity. (Defs.' Br. at 17-20.) "Under the doctrine of governmental immunity, both a county and a county's public officials are immune from suits alleging negligence in the exercise of a governmental function, unless the plaintiff shows that the county or county's public officials waived immunity." Butterfield v. Gray, 279 N.C. App. 549, 554 (2021) (citing Est. of Williams *ex rel* Overton v. Pasquotank Cnty. Parks & Recreation Dep't, 366 N.C. 195, 198 (2012)). Purchasing liability insurance "may waive governmental immunity for both a county and a sheriff," but only to the extent of the insurance coverage, and "[g]overnmental immunity is therefore not waived where the applicable liability insurance policy excludes a plaintiff's claim from coverage." Butterfield, 279 N.C. App. at 556 (citing Patrick v. Wake Cnty. Dep't of Hum. Servs., 188 N.C. App. 592, 595 (2008)).

In this case, Rockingham County took out an insurance policy that specifically provides that purchase of the policy does not constitute a waiver of governmental immunity. (Insurance Policy, [Doc. #13-1] at 15.)[5] The language in these provisions is identical to language in other insurance policies that North Carolina courts have interpreted as not waiving governmental immunity, see Hart v. Brienza, 246 N.C. App. 426, 434 (2016), and which Plaintiff agrees

---

[5] Plaintiff references the insurance policy in the Amended Complaint (Am. Compl. ¶¶ 4-6), and Moving Defendants provided the Policy in its entirety attached to their Motion to Dismiss. (See Doc. #13-1.) Plaintiff has not raised a question as to the validity or authenticity of the Policy as attached, and the Court will consider the policy as provided by Moving Defendants without converting Moving Defendants' motion into one for summary judgment. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (noting that in ruling on a Rule 12(b)(6) motion to dismiss, courts may consider "documents incorporated into the complaint by reference"); see also Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted) (noting that courts will consider documents that are "integral to the complaint" and authentic).

"preserves [Sheriff] Page's governmental immunity for state tort claims brought in his official capacity." (Pl.'s Br. [Doc. #31] at 22.) Thus, Plaintiff does not dispute Sheriff Page's entitlement to governmental immunity on the state law claims. Therefore, Plaintiff's North Carolina tort claims against Sheriff Page in his official capacity in Count 5 (Injury to Prisoner), Count 6 (Medical Malpractice), and Count 8 (Wrongful Death) are dismissed on governmental immunity grounds.

Moving Defendants also argue that Officers Stultz and Boyd are entitled to public official immunity. (Defs.' Br. at 19-20.) Under North Carolina law, public officials "engaged in the performance of governmental duties involving the exercise of judgment and discretion[] may not be held personally liable for mere negligence," Meyer v. Walls, 347 N.C. 97, 112 (1997) (quotation omitted), and this immunity shields the official from liability "unless the officer's actions were 'malicious, corrupt, or outside the scope of his official authority.'" White v. City of Greensboro, 586 F. Supp. 3d 466, 482 (M.D.N.C. 2022) (quoting Thomas v. Sellers, 142 N.C. App. 310, 313 (2001)). Here, Plaintiff alleges that the individual Defendants acted willfully and wantonly. Further, under Fourth Circuit precedent, where an officer is denied qualified immunity, he is likewise not entitled to public official immunity. See Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir. 2003) (noting that North Carolina public official immunity is "unavailable to officers who violate clearly established rights"); Cooper v. Sheehan, 735 F.3d 153, 160 (4th Cir. 2013). Because the Court is reserving its decision on Plaintiff's constitutional claims and Moving Defendants' qualified immunity defense until the Parties have re-briefed the underlying constitutional issue, the Court will likewise deny the Motion to Dismiss based on public official immunity at this time. As noted above, Plaintiff

9

alleges that all Defendants, including Officers Stultz and Boyd, knew of Kepley's risk of suicide and failed to take steps to minimize this risk, and it is likely that any further assessment of the immunity defense would need to be made after discovery, where Plaintiff will have to present evidence to support these contentions. Moving Defendants' Motion to Dismiss will therefore be denied as to the state law claims against Officers Stultz and Boyd, and Moving Defendants may choose to re-brief the issue now or raise it instead at summary judgment.

III. CONCLUSION

IT IS THEREFORE ORDERED that Moving Defendants' Motion to Dismiss [Doc. #13] is denied, except that the Motion is granted as to all North Carolina state law claims against Sheriff Samuel Scott Page in Counts 5, 6, and 8, on the basis of governmental immunity. The Motion is denied without prejudice, and Moving Defendants may choose to re-brief the issues now under the appropriate standards or raise them instead at summary judgment.

This, the 31st day of March, 2025.

*Joi Elizabeth Peake*
United States Magistrate Judge